# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **FLAVIA PICHIORRI, PH.D.** | : | |
| 526 Venado Vista Drive | | |
| La Canada Flintridge, California 91011 | : | Case No._____ |
| | | |
| Plaintiff, | : | Judge:_____ |
| | | |
| vs. | : | Magistrate Judge: _____ |
| | | |
| **THE OHIO STATE UNIVERSITY** | : | JURY DEMAND ENDORSED |
| **COLLEGE OF MEDICINE INVESTIGATION** | | HEREON |
| **COMMITTEE ("COMIC")** | : | |
| c/o Dean of The Ohio State University College | | |
| of Medicine | : | |
| 370 West Ninth Avenue | | |
| Columbus, Ohio 43210 | : | |
| | | |
| and | : | |
| | | |
| **ARTHUR BURGHES, Member** | : | |
| **THE OHIO STATE UNIVERSITY** | | |
| **COLLEGE OF MEDICINE INVESTIGATION** | : | |
| **COMMITTEE ("COMIC")** | | |
| c/o Dean of The Ohio State University College | : | |
| of Medicine | | |
| 370 West Ninth Avenue | : | |
| Columbus, Ohio 43210 | | |
| | : | |
| and | | |
| | : | |

**BRANDON BIESIDADECKI, Member**
**THE OHIO STATE UNIVERSITY**                    :
**COLLEGE OF MEDICINE INVESTIGATION**
**COMMITTEE ("COMIC")**                          :
c/o Dean of The Ohio State University College
of Medicine                                       :
370 West Ninth Avenue
Columbus, Ohio  43210                            :

       and                                  :

**JONATHAN DAVIS, Member**                        :
**THE OHIO STATE UNIVERSITY**
**COLLEGE OF MEDICINE INVESTIGATION** :
**COMMITTEE ("COMIC")**
c/o Dean of The Ohio State University College      :
of Medicine
370 West Ninth Avenue                             :
Columbus, Ohio  43210

       and                                  :

                                       :

**JILL A RAFAEL-FORTNEY, MEMBER**              :
**THE OHIO STATE UNIVERSITY**
**COLLEGE OF MEDICINE INVESTIGATION** :
**COMMITTEE ("COMIC")**
c/o Dean of The Ohio State University College      :
of Medicine
370 West Ninth Avenue                             :
Columbus, Ohio  43210

       and                                  :

**YUTONG ZHAO, MEMBER**                        :
**THE OHIO STATE UNIVERSITY**
**COLLEGE OF MEDICINE INVESTIGATION**
**COMMITTEE ("COMIC")**                          :
c/o Dean of The Ohio State University College
of Medicine                                       :
370 West Ninth Avenue
Columbus, Ohio  43210                            :

       and                                  :

2

**THOMAS HUND, MEMBER**                               :
**THE OHIO STATE UNIVERSITY**
**COLLEGE OF MEDICINE INVESTIGATION** :
**COMMITTEE ("COMIC")**
c/o Dean of The Ohio State University College     :
of Medicine
370 West Ninth Avenue                              :
Columbus, Ohio  43210

                                                   :

          and                                      :

**LOREN WOLD, MEMBER**                              :
**THE OHIO STATE UNIVERSITY**
**COLLEGE OF MEDICINE INVESTIGATION** :
**COMMITTEE ("COMIC")**
c/o Dean of The Ohio State University College     :
of Medicine
370 West Ninth Avenue                              :
Columbus, Ohio  43210

                                                   :

          and                                      :

                                                   :

**COLLEEN RUPP, MEMBER**
**THE OHIO STATE UNIVERSITY**                       :
**COLLEGE OF MEDICINE INVESTIGATION**
**COMMITTEE ("COMIC")**                             :
c/o Dean of The Ohio State University College
of Medicine                                        :
370 West Ninth Avenue
Columbus, Ohio  43210                               :

          and                                      :

**THE OHIO STATE UNIVERSITY BOARD**                 :
**OF TRUSTEES**
190 North Oval Mall                                :
Columbus, Ohio 43210

                                                   :

          and                                      :

                                                   :

**PETER MOHLER,** Vice President for Research
Ohio State University Office of Research            :
208 Bricker Hall
190 North Oval Mall                                :
Columbus, Ohio 43210
                    Defendants                      :

## *VERIFIED COMPLAINT*

### I.   *Preliminary Statement*

1.     This action seeks injunctive relief and asserts constitutional violations against The Ohio State University Board of Trustees (hereinafter referred to as the "Board") and The Ohio State University College of Medicine Investigation Committee and its Individual Members (hereafter referred to as "COMIC" or "COMIC committee member") and Peter Mohler, the Vice President for Research at The Ohio State University.   The claims for relief are for violation of substantive due process rights, procedural due process rights, negligence, defamation, false light invasion privacy, tortious interference with business relationship, breach of implied contract and promissory estoppel, intentional infliction of emotional distress, principal-agent/vicarious liability, and intentional misrepresentation.

### II.   *Jurisdiction*

2.     This action is instituted and authorized by 42 U.S.C. § 1983,  § 1985 and 28 U.S.C. § 2201 (a) and the Fourteenth Amendment of the United States Constitution.   As to certain state law claims, those claims are brought pursuant to Ohio Revised Code § 2305.09.

3.     The jurisdiction of this Court to hear and determine the claims is based on 28 U.S.C. § 1331, § 1332 (a)(2) and § 1367 and by this Court's pendent and ancillary jurisdiction over the state law claims.

4.     Damages, costs and attorneys' fees may be awarded arising from violation of Plaintiff's constitutional rights alleged pursuant to 42 U.S.C. §1988(b).

### III.    *Venue*

5.      This action properly lies in the United States District court, Southern District, Eastern Division, pursuant to 28 U.S.C. § 1391 (b) because all or a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this Judicial District.

### IV.    *Parties*

6.      Plaintiff, Flavia Pichiorri, Ph.D., (hereinafter referred to as "Dr. Pichiorri" or "Plaintiff") is an experienced cancer researcher who has published numerous articles and papers in the area of cancer cell research.  She is a resident of the State of California, United States of America.

7.      Defendant, The Ohio State University College of Medicine Investigation Committee (hereinafter referred to as the "COMIC") and its Members, as of April 17, 2020, is a duly authorized ad hoc committee of The Ohio State University ("OSU"), charged with conducting the instant research misconduct investigation.  The COMIC investigated Plaintiff and produced a report finding that Plaintiff had engaged in research misconduct in 2020 and disseminated such report findings in 2022.  The individual COMIC defendants, Arthur Burghes, Brandon Biesidadecki, Jonathan Davis, Jill A. Rafael-Fortney, Yutong Zhao, Thomas Hund, Loren Wold, and Colleen Rupp are faculty and staff of The Ohio State University.

8.      Defendant, The Board of Trustees (the "Board"), is a state entity authorized and existing pursuant to R.C. § 3335.01 and § 3335.02 with its principal place of business located at 190 North Oval Mall, Columbus, Ohio 43210.  The Board is authorized to sue and be sued on behalf of the Ohio State University ("OSU") pursuant to R.C. § 3335.03.

9.      Defendant Peter Mohler, Vice President of Research of The Ohio State University is an OSU employee who supervises all research activities, including complaints of research

misconduct.

V.     *__Facts__*

10.     Plaintiff is an American citizen born in Italy, who received her Bachelors of Science Degree in Biological Science from the University of Rome "Tor Vergata", Rome, Italy in 1996; her Master's of Science in Molecular Cell and Development Biology, cum laude from the University of Rome in 1999 and her Ph.D. in Experimental Medicine from the University of Rome in 2006.

11.     Plaintiff was a visiting Ph.D. student at The Ohio State University from 2004 through June, 2006, under the supervision of Carlo M. Croce, M.D.

12.     After receiving her doctoral degree from the University of Rome in 2006, Plaintiff became a post-doctoral student/researcher in Defendant OSU's Department of Molecular Virology, Immunology and Medical Genetics from October, 2006 through October, 2010 under the direction of Carlo M. Croce, M.D.

13.     From December, 2010 through August, 2011, Plaintiff served as a research scientist in Defendant OSU's Department of Molecular Virology, Immunology and Medical Genetics under the direction Carlo M. Croce, M.D.

14.     From 2011 through 2016, Plaintiff was an Assistant Professor in Defendant OSU's College of Medicine, Division of Hematology.

15.     Plaintiff left OSU in August, 2016 and is presently a Professor at The City of Hope Medical Center and at The Beckman Research Institute of the City of Hope in Duarte, California.

16.     Dr. Pichiorri's research has focused on basic and translational research in Multiple Myeloma and Leukemia, including (1) preclinical and clinical experimental therapeutics in Multiple Myeloma and Acute Myeloid Leukemia; (2) identification of genetic and epigenetic abnormalities

involved in hematologic diseases; (3) developing novel antibody based therapies for myeloma and leukemia patients; (4) understanding mechanisms of resistance in myeloma patients at relapse; (5) designing pre-IND studies for Food and Drug Administration (FDA) approval of antibodies to move them to early phase trials; (6) designing correlative studies for Phase 1-2 clinical trials; and (7) identification of easily assessable cancer biomarkers for multiple myeloma patient stratification at diagnosis and resistance to therapy.

17.     Dr. Pichiorri has had a productive and accomplished research career, having authored or co-authored over one hundred (100) publications, taught at numerous invited seminars, lectures and forums, developed compounds and produced preclinical data to support several National Cancer Institute supported Phase 1 and Phase 2 clinical trials, lectures and forums, provided and served on numerous dissertation committees, trained post-doctoral fellows and enjoyed various editorial board appointments and activities, and is the co-inventor of several patent applications.

18.     During the period of 2004 through 2011, as part of her work as a researcher in Dr. Carlo Croce's laboratory at Ohio State University, Plaintiff co-authored and/or participated in several manuscripts under Dr. Croce's tutelage, including Manuscript #1, co-authored in 2010, involving the "Downregulation of p53–inducible MicroRNAs 192, 194 and 215 impairs the p53/MDM2 autoregulatory loop in multiple myeloma development"; Manuscript #2, co-authored in 2013, involving "In vivo NCL targeting affects breast cancer aggressiveness through MiRNA regulation"; Manuscript #5, co-corresponding author in October, 2013 involving "HDAC inhibitor AR-42 decreases CD44 expression and sensitizes myeloma cells to lenalidomide"; and Manuscript #6, co-authored in May, 2008, involving "Fhit interaction with ferredoxin reductase triggers generation of reactive oxygen species and apoptosis of cancer cells", retracted on August 30, 2017.

19.     The manuscripts were applauded and well received in the scientific and cancer

research communities and accepted for publication in journals; the underlying findings have been consistently adopted and reaffirmed; and for the past ten (10) years, have been recognized and acclaimed within the scientific and cancer research communities as breakthrough findings, and have never been refuted. At the present time, the findings are being used as fundamental research findings by scientific and medical communities throughout the world.

20. Although Dr. Pichiorri followed all procedures, protocols and standards of practice with regard to her work, allegations of potential research misconduct were made against Dr. Pichiorri during the period of March 17, 2017 through November 18, 2018 involving the manuscripts in which Plaintiff was involved as only one of the researchers. Notably, the other co-researchers, for the most part, have not been accused of research misconduct even though Plaintiff relied on them for the scientific methodologies, data and images to draft the manuscripts that were the subject of the research misconduct investigation.

21. Even though the underlying findings of the manuscripts have repeatedly been reaffirmed, never refuted or disproven and there has never been any dispute regarding the underlying findings, Defendants initiated a review of allegations of research misconduct through its Committee of Initial Inquiry (CII), in November, 2017 and later on January 19, 2018 more than seven (7) and ten (10) years, respectively, after Manuscript #1 and #6 were published. Dr. Pichiorri provided responses to the allegations and complied with and provided all requested information.

22. In order to further the investigation, Defendants created COMIC, composed of representatives from various departments within the College of Medicine.

23. Defendants were duty bound to apply the Federal Office of Research Integrity ("ORI") Standards, 42 C.F.R. § 93.103 (a), (b) and (c) to research misconduct accusations including those against Dr. Pichiorri. The Ohio State University's own research misconduct rules, Ohio State

University Misconduct Policy § III.A, are based on the federal standards. *See* Ohio Administrative Code § 3341-7-05 (A)(2) (university rules must be in accord with federal regulations for "reporting, investigating, responding to, disposing of, and appealing allegations"). The investigation of research misconduct accusations involving federally funded research must be strictly based on federal ORI regulations.

24.     Defendants were negligent in creating and convening CII and COMIC whose members lacked the requisite expertise to review and evaluate research misconduct accusations. Defendants' failure to properly select, train and provide sufficient oversight to the CII and COMIC resulted in a flawed investigation.

25.     COMIC identified in its investigation only eight (8) images identified as allegedly false, with four (4) images already corrected even before the initiation of the investigation. Plus, one (1) mistake in the legend of a figure, which was proven to be inadvertently included before the final publication by Dr. Pichiorri's post-doctoral fellow and research scientist. Of these images identified by COMIC, Dr. Pichiorri has submitted corrected images and provided verified data, including evidence of replicated experiments by peers, proving the underlying research conclusions were accurate.

26.     COMIC, nevertheless, continued its investigation. Dr. Pichiorri submitted additional evidence showing no research misconduct occurred and acted in full cooperation with COMIC to demonstrate her honestly and willingness to correct any honest errors.

27.     Defendants knew or should have known that non-scientific mistakes are not commonly elevated to research misconduct.   Honest mistakes are common and often occur in the course of scientific research and the production of manuscripts despite a diligence review by the authors. When mistakes are found, they are customarily corrected by researchers and are never

deemed evidence of intentional research misconduct or recklessness.

28.     Dr. Pichiorri, by and through her legal counsel, demanded that COMIC apply the correct standards for finding intentional research misconduct. COMIC disregarded this demand and applied its "own" standard to the accusation of research misconduct against Dr. Pichiorri.

29.     Rather than accept the corrected images and data as evidence of honest error and apply the right standard for research misconduct accusations, COMIC concluded its investigation and made findings of research misconduct against Dr. Pichiorri.

30.     The COMI Committee's findings were invalid wherein it found research misconduct where no evidence of intent, knowledge or recklessness as required was established.

31.     Dr. Pichiorri and other OSU researchers at the time were not trained, were left unsupervised, without computers connected to OSU servers or standard of procedures to save or record the data, required to work long days and nights under strenuous conditions and treated as cheap labor to perform the bottom rung work related to the manuscripts in order that OSU and Dr. Croce, the party primarily responsible for the research, could continue to receive grants and grant monies. Despite the problems in Dr. Croce's laboratory, of which OSU and the COMIC were aware, the COMIC ignored those problems and assigned fault for the laboratory failings to Dr. Pichiorri.

32.     COMIC and its members also knew or should have known Dr. Pichiorri was not responsible for generating the underlying data that COMIC found was misconduct. She relied on data and figures from the manuscript co-authors. The COMIC members knew this fact and yet found Dr. Pichiorri engaged in research misconduct. Her role was limited to a review of data and figures *produced* by others not even working under her direct supervision. COMIC's finding of misconduct against her — but not the co-authors who produced all the data and figures — is disingenuous and cast Dr. Pichiorri in a false light as a person guilty of research misconduct.

33.     More to the point, Dr. Pichiorri's role as a co-author only requires her to use reasonable diligence in reviewing *already* prepared data and figures by her co-authors. As for any figure or data prepared by her, she used, to best of her knowledge as a Ph.D student and post-doctoral student, all of the available resources and know-how she possessed to review the few images and data prepared by her in which no misconduct was found. She was only expected to adhere to the accepted method of review of data prepared by others as a co-author of a manuscript. The COMIC never had any evidence Dr. Pichiorri deviated from the accepted methods of review of data and figures and there was no evidence she was not diligent as a co-author. The findings of recklessness made by COMIC are unusual and do not comport with common practices for co-authors for review of images and data. COMIC knew this fact and still found she was reckless. No co-author can guarantee all data and figures are perfectly accurate.

34.     In the report, Defendants recommended the retraction of Manuscript #1 and Manuscript #2, and the correction of Manuscript #5. Defendants further concluded that Dr. Pichiorri be permanently ineligible for rehire at OSU. The retraction recommendation has dealt a severe blow to Dr. Pichiorri's reputation.

35.     Even though its findings were not based upon proper standards of review and investigation, Defendants communicated the findings of research misconduct against Dr. Pichiorri to various research journals in or around November, 2022. Defendants' continuous requests for journals to retract articles (manuscripts identified in the investigation) has resulted in deprivation of Dr. Pichiorri's due process rights, defamation of her character and reputation as a cancer researcher and scholar, and tortiously interfered with current employment and future research opportunities.

36.     Defendants did not report, nor disseminate any findings of misconduct against Drs. Carlo M. Croce, Dario Palmieri, Sung-Suk Su, Alessandro Canella , or Craig Hofmeister who either produced the data or were also responsible as a first, co-senior and senior authors to supervise the data and images contained in the manuscripts which COMIC found constituted research misconduct. Indeed, Dr. Carlo Croce was the principal senior lead researcher overseeing all the findings in which image falsifications were found and no research misconduct finding was made against him, even though all the work was produced in the OSU laboratory controlled by him and Plaintiff and other PhD students and post-doctoral researchers were supervised by him.

37.     As stated previously, Defendants' defamatory conduct against Dr. Pichiorri has continued since the 2020 COMIC report was issued and as recently as late July and November, 2022 when the COMIC research misconduct findings were disseminated to prestigious journals, including the international scientific journal, *Nature*, causing Dr. Pichiorri further public humiliation and emotional distress in 2022 and ongoing.

38.     Defendants' employees and agents also contacted Dr. Pichiorri's employer as recently as October 2022 disclosing the research misconduct findings against her, casting Dr. Pichiorri in a false and bad light.  The disclosure to Dr. Pichiorri's employer included a request that her employer investigate her work.  The disclosure and request were disruptive and interfered with Dr. Pichiorri's relationship with her employer and colleagues.

39.     The Defendants not only disclosed this erroneous COMIC report to her current employer but the request to investigate involved "all" of her other National Institutes of Health (NIH) funded research, none of which was involved in the COMIC investigation.   Her employer was compelled to investigate all her work.  Dr. Pichiorri's employer eventually concluded she had

not engaged in any research misconduct, but the damage was already done. She was diminished in her role as a senior leader at her current employer and one of her own staff allegedly resigned due to the accusations made by Defendants.

40.     Upon information and belief, Dr. Pichiorri also suffered another severe blow to her reputation as a researcher. The NIH, for reasons unknown to her, and independently from the Office of Research Integrity, in November 2022 removed her permanent membership from a coveted panel at the NIH, in which she served for more than seven (7) years. Her unexplained removal from a NIH panel, right after the publication of her research misconduct accusations in *Nature journal* in 2022, has caused her substantial emotional distress and irreparably harmed her reputation and standing in the research community.

41.     In sum, Defendants' actions caused irreparable harm to Dr. Pichiorri, without a sound factual and/or legal basis, and has severely damaged Plaintiff's reputation and interfered with existing job relationships and future grant and research opportunities.

42.     Since COMIC issued its erroneous report, Dr. Pichiorri, as well as a host of other researchers, have steadfastly maintained that the COMIC findings were not only incorrect, but were premised upon improper standards of review; and unevenly applied to Dr. Pichiorri, especially with respect to male researchers. Dr. Pichiorri has appealed and challenged the COMIC report since it was issued.

43.     The allegedly false research contained in the manuscripts identified by COMIC has been accepted and replicated by peer researchers, shared among researchers and has been cited and relied on by more than seven hundred researchers who have produced *other* manuscripts and publications based on such data, figures and conclusions.

44.     Defendants, as well as their colleagues and affiliated entities, have relied on the

alleged false research. Defendants, by and through its employees and agents, including but not limited to The Ohio State Innovation Foundation, have filed a patent application, Patent No. 10022342 and 2022/0251171A1, citing and relying on the same data, identified by COMIC as research misconduct.

45.     Defendants also omitted to submit to the journals that all research documents associated with the manuscripts were found including all dated original figures and laboratory books identified as research misconduct in the COMIC report. In all of these instances, Defendants have continuously submitted the alleged "research misconduct claims" to the journals to request retraction, omitting to show that all the data supporting the final scientific conclusions' were identified, and that these data were not only repeated from laboratories outside of OSU, but also independently reported from OSU laboratories in different publications and used to file US patents ('other'). Defendants have never called for the revision or retraction of these "other" supportive published manuscripts but only forced the retraction of the manuscript in which Dr. Pichiorri was involved.

46.     COMIC also failed to adhere to a preponderance of the evidence standard when evaluating the research misconduct accusations against Dr. Pichiorri. COMIC had ample evidence of honest error since the research hypotheses and conclusions in the manuscripts were accurate (correction and revisions to figures did not change conclusions) and several documents showing that Dr. Pichiorri was not directly responsible for these mistakes but only missed them. A preponderance standard, correctly applied, favors a finding of no research misconduct in Dr. Pichiorri's case.

47.     The actions of Defendants in this matter inflicted emotional distress upon Plaintiff and she has suffered mental anguish and depression because of Defendants' conduct.

48.     The alleged false research, as contained in the COMIC's report, has also been used,

14

relied on, and included in patent submissions to the United States Patent Office and in published research articles by Defendants, or their agents, assigns, employees, collaborators, and staff.

49.     Defendants had actual or constructive knowledge that the data, corrected images, and scientific conclusions set forth in the alleged false manuscripts were not false but well-established science frequently cited by and relied on by OSU and the scientific community.     COMIC's findings and report constitute abuse and a complete disregard of the law.  This Court, therefore, is not required to defer to the findings of the COMIC.

50.     Defendants' finding of research misconduct in the instant case is excessive and not consistent with the Federal Office of Research Misconduct ("ORI") past record of finding research misconduct.  Federal ORI, whose rules COMIC is bound by, has historically determined that research misconduct accusations are typically the result of honest error where, as in the instant case, only a few images and data are involved.   Where ORI has found research misconduct, it has only found actual research misconduct in cases where the mean number of falsified or fabricated data involved an average sixty-two (62) images within a range of minimum twelve (12) to one hundred eighty-nine (189) images.   The research accusations against Dr. Pichiorri involved significantly fewer images and 50% of them were already corrected using verified original data.

51.     Dr. Pichiorri's career and professional reputation have suffered irreparable, grave injury because of Defendants, COMIC's improper and errant findings of misconduct and the publication of such erroneous findings that have placed Dr. Pichiorri in a false light and irreparably damaged her reputation in the scientific community.

<u>TOLLING OF STATUTE OF LIMITATIONS AND CONTINUING VIOLATIONS</u>

52.     The causes of action pleaded in this Complaint are tolled as a continuous violation.

53.     The applicable statute of limitations are tolled because the wrongful conduct pleaded

in this Complaint were a continuous series of acts and conduct through November 2022.

54.     As a result of the continuing violations, which constitute a single wrong that initially began within the applicable limitations period, the applicable statutes of limitation are tolled.

### FIRST CAUSE OF ACTION
### (Violation of Substantive Due Process Rights)

55.     Plaintiff avers the allegations contained in paragraphs one (1) through fifty-four (54) as if fully restated herein.

56.     Defendants knew or should have known that their failure to strictly apply federal misconduct standards to the investigation constituted a substantive violation of Plaintiff's right to a fair and impartial investigation, hearing and report regarding the alleged research misconduct charges.

57.     The result of such failure led to the false and misleading COMIC report finding that Plaintiff had engaged in research misconduct and subsequent dissemination of the erroneous report in 2022.

58.     Misapplying the federal research misconduct standards (which includes the honest error standard) effectively denied Plaintiff the right to a fair and impartial investigation.

59.     Plaintiff's substantive due process rights have been violated, pursuant to §1983 on several bases, including but not limited to those bases as set out in the foregoing paragraphs, when the improper findings of misconduct were issued by Defendant, but also in 2022 and thereafter when Defendants published its improper findings to various papers and journals and requested retraction of articles based upon its improper and skewed findings, resulting in a retraction and note of concern by journals.

60.     Both the improper OSU misconduct findings, and Defendants' publishing action(s), requesting retractions, whether viewed separately or collectively, were equally damaging to Plaintiff

and done without proper standards of review, as well as premised on the continuing due process failures with respect to Plaintiff by Defendants regarding its COMIC's improper and skewed investigative findings.

61.     Plaintiff, therefore, was not provided a fair and impartial investigation or hearing based on Defendants' failure to employ proper federal research misconduct standards.

62.     As a direct and proximate result of Defendants' conduct, Plaintiff substantive due process rights have been violated. Plaintiff is entitled to a revised COMIC report consistent with federal and proper research misconduct standards, retraction of the COMIC report, and OSU publication to journals and the public that its report and findings will be retracted.

### SECOND CAUSE OF ACTION
### (Procedural Due Rights)

63.     Plaintiff avers the allegations contained in paragraphs one (1) through sixty-two (62) as if fully restated herein.

64.     Defendants knew or should have known that the COMIC's failure to strictly apply federal and OSU misconduct standards would result in findings of research misconduct against the Plaintiff.

65.     Plaintiff's due process rights required that Defendants conduct a fair investigation and produce a report that correctly applied federal and OSU standards. If the correct standards had been applied, Plaintiff's submission of evidence (i.e., explanations, revisions, and data) would have resulted in COMIC finding honest error.

66.     The COMIC's failures fundamentally denied Plaintiff the opportunity to defend herself against the research misconduct accusations.

67.     As a direct and proximate result of Defendants' conduct, Plaintiff's procedural due process rights have been violated. Plaintiff is entitled to a revised COMIC report consistent with

federal and proper research misconduct standards, retraction of the COMIC report, and OSU publication to journals and the public that its report and findings will be retracted.

### THIRD CAUSE OF ACTION
#### (Negligence—Preliminary and Permanent Injunctive Relief)

68.     Plaintiff avers the allegations contained in paragraphs one (1) through sixty-seven (67) as if fully restated herein.

69.     Defendants owed a duty to Plaintiff to apply the correct federal research misconduct standards to the accusation of research misconduct and consequently produce a report consistent with such standards and the evidence provided by Plaintiff to COMIC showing no research misconduct had occurred.

70.     Defendants further owed a duty to Plaintiff and had a responsibility and duty to properly train and supervise the members of COMIC which they failed to do, prior to the Committee investigating and issuing a skewed decision regarding its findings of misconduct.  Defendants acted negligently with respect to Plaintiff and the alleged research misconduct investigation and report.

71.     Defendants, through its COMIC, breached this duty by negligently instituting an investigation in which they improperly and with indifference to the proper standards of review, caused and created a report which erroneously found that Dr. Pichiorri engaged in research misconduct.

72.     Further, Dr. Pichiorri's work was not reckless as she performed her work in accordance with accepted research practices, which includes correction and revision of manuscripts, a common practice in the research community.  However, Defendants by failing to provide correct training and support a negligent investigation was conducted and report issued.

73.     In reliance on the erroneous report, Defendants, by and through its employees and representatives, disseminated the report and its findings to public and scientific journals and Dr.

Pichiorri's current employer through 2022. The dissemination of the report has triggered further investigation by journals, a retraction in 2022 and an inquiry by her employer into her research work in 2022, wherein research misconduct was not found.

74. As a direct and proximate result of Defendants erroneous COMIC findings, Plaintiff has and will continue to suffer irreparable injury to her professional career, reputation and academic standing in the scientific research community due to Defendants' failure to uphold the duty owed Plaintiff.

75. Further, as a direct and proximate result of Defendants' negligent review and erroneous findings, Plaintiff's academic and professional reputation and personal standing in the community continues to be adversely affected.

76. Further, as a direct and proximate result of Defendants' negligent review, erroneous findings and other negligence, and the dissemination of the same, Plaintiff may lose awards and grants, important to the further development of her career and research because of COMIC's gross errors and false conclusions.

77. The diminished ability of Dr. Pichiorri to receive grants and award opportunities due to the COMIC's grossly erroneous report will deprive the public and scientific community of Dr. Pichiorri's contributions to biological science and patient care.

78. As a direct and proximate result of Defendants' actions, Defendants must be enjoined from (i) allowing the COMIC report, with its erroneous findings, to be maintained as a record of the University, (ii) that it cease and desist disseminating the COMIC report and its findings to third parties, and (iii) that Defendants be directed to produce a revised report that is consistent with federal research misconduct standards and evidence presented by Plaintiff.

### FOURTH CAUSE OF ACTION
#### (Defamation—Preliminary and Permanent Injunctive Relief)

79.     Plaintiff avers the allegations contained in paragraphs one (1) through seventy-eight (78) as if fully restated herein.

80.     Defendants acted without privilege and acted with actual malice, recklessness and negligence by publishing skewed findings of research misconduct against Plaintiff  and by publishing on multiple occasions the false report, orally and in writing, to the public and research community.

81.     Defendants falsely portrayed Plaintiff as unethical by accusing Plaintiff of research misconduct, all with actual malice and reckless disregard for the truth, with the intent to unduly pressure the scientific journals to retract manuscripts in which Plaintiff took part in and to publicly harm Plaintiff's good reputation and character.

82.     Defendants' false publications have directly and proximately caused Plaintiff to suffer public humiliation, embarrassment, and psychological injury by casting her as unethical and one who has committed research misconduct among readers of the publications to which Defendants disseminated its erroneous findings of research misconduct, as well as members of the OSU research community and the general community.  Additionally, Plaintiff may suffer the loss of grants and benefits, as well as research opportunities.

83.     Further, as a direct and proximate result of Defendants' actions, Defendants must be enjoined from (i) allowing the COMIC report, with its erroneous findings, to be maintained as a record of the University, (ii) that it cease and desist disseminating the COMIC report and its findings to third parties, (iii) that Defendants be directed to produce a revised report that is consistent with federal research misconduct standards and evidence presented by Plaintiff or retract, correct and/or remove such report from its records and from any and all online publications; and (iv) they inform

all scientific journals (who received the report or accusation of misconduct), including the journal *Nature*, the OSU research community and the general public that the COMIC report has been revised and/or retracted.

## FIFTH CAUSE OF ACTION
### (False Light Invasion of Privacy—Preliminary and Permanent Injunctive Relief)

84.     Plaintiff avers the allegations contained in paragraphs one (1) through eighty-three (83) as if fully restated herein.

85.     Defendants placed Plaintiff in a false light in the public by publishing false statements that equated Plaintiff as a person who engaged in research misconduct, all of which would be highly offensive to a reasonable person in the Plaintiff's position.

86.     Defendants published these statements concerning Plaintiff in print form to members of the scientific community, employees of OSU, to Plaintiff's employer and generally to OSU's medical research and general research communities, as well as others.

87.     Defendants knowingly acted with reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff was placed because Defendants knew or should have reasonably known that Plaintiff had not committed research misconduct and had not falsified research data as it alleged.

88.     Defendants' publication of its improper and skewed findings of research misconduct regarding Plaintiff have directly and proximately caused Plaintiff to suffer public humiliation, embarrassment, and psychological injury as a result of being cast as one who engaged in research misconduct among members of her scientific community, the medical research community and the general community.

89.     Further, as a direct and proximate result of Defendants' actions, Defendants must be enjoined from (i) allowing the COMIC report, with its erroneous findings, to be maintained as a

record of the University, (ii) that it cease and desist disseminating the COMIC report and its findings to third parties and to online publications , and (iii) that Defendants be directed to produce a revised report that is consistent with federal research misconduct standards and evidence presented by Plaintiff.

### SIXTH CAUSE OF ACTION
### (Tortious Interference With Business
### Relationships - Preliminary and Permanent Injunctive Relief)

90.     Plaintiff avers the allegations contained in paragraphs one (1) through eighty-nine (89) as if fully restated herein.

91.     Plaintiff had a business relationship and was employed with the City of Hope Medical Center for Multiple Myeloma Research, Beckman Research Institute of the City of Hope in Duarte, California when Defendants alleged that Plaintiff had falsified data and performed an investigation failing to employ proper standards and issued and published skewed findings that Plaintiff had committed research misconduct.

92.     Defendants were aware of Plaintiff's employment as a scientist and Professor at City of Hope Medical Center and The Beckman Research Institute of the City of Hope in Duarte, California when it published its erroneous findings of research misconduct and when it contacted Plaintiff's employer and the scientific journals requesting retraction of acclaimed and never retracted manuscripts of which Plaintiff had been a part.

93.     Defendants intentionally and improperly informed Dr. Pichiorri's employer and also published false and misleading statements in 2022 that Plaintiff had committed research misconduct and created negative sentiment in the scientific research committee against Plaintiff based upon skewed findings of research misconduct premised upon application of improper standards, interfering with Plaintiff's employment business relationship and prospective business relationships.

94.    In addition, Defendants communicated its findings to Dr. Pichorri's employer and requested her employer investigate her based on the erroneous COMIC findings and report and requested that her employer investigate all NIH grant applications, reports, manuscripts and funded research that she was involved in.

95.    Even with direct knowledge of Plaintiff's business relationships based upon Plaintiff's excellent reputation and research acumen in the research community, Defendants, nevertheless, interfered with Plaintiff's relationships causing disruption and conflict in that relationship and in prospective relationships.  Defendants' actions in causing strife, discord and disruption in Plaintiff's business relationships were committed without immunity or privilege.

96.    Defendants acted without privilege as it committed its actions with malice, hatred, recklessness, and negligence by contacting Plaintiff's employer regarding its skewed and improper research misconduct allegations and findings and publishing its findings and requesting retractions, all for the purpose of tortiously interfering with Plaintiff's existing employment/business relations and/or prospective business relationships.

97.    Further, as a direct and proximate result of Defendants' actions, Defendants must be enjoined from (i) allowing the COMIC report, with erroneous findings, to be maintained as a public record of the University, (ii) that it cease and desist disseminating the COMIC report and its findings to third parties and online publications, and (iii) that Defendants be directed to produce a revised report that is consistent with federal research misconduct standards and evidence presented by Plaintiff.

### SEVENTH CAUSE OF ACTION
#### (Breach of Implied Contract and Promissory Estoppel—Injunctive Relief)

98.    Plaintiff avers the allegations contained in paragraphs one (1) through ninety-seven (97) as if fully restated herein.

99. Defendants impliedly agreed to apply 42 CFR § 93.103 (a) (b) and (c) and OSU Policy III.A standards and breached such representations by finding that Dr. Pichiorri had engaged in research misconduct.

100. Defendants made promises and assertions and committed acts and followed certain customs and practices upon which Plaintiff relied to her detriment and which led Plaintiff to believe that she would be treated fairly and equitably as a researcher at OSU and would not be falsely accused or improperly investigated for research misconduct.

101. Plaintiff, at all times satisfied the implied contractual agreement(s) by fulfilling her research responsibilities and at no time intentionally, knowingly or recklessly provided any cause for a finding of research misconduct.

102. Defendants breached its promises, assertions, policies and custom and practice, which were relied upon by Plaintiff as constituting covenants of an implied employment agreement between Plaintiff and Defendants when, contrary to its rules and policies, it treated Plaintiff contrary to its policy and customs and practices by not only improperly alleging and investigating Plaintiff for research misconduct, but by employing improper standards of review in said investigation and findings.

103. The actions and conduct of Defendants toward Plaintiff constitute a breach of the implied contract and covenants of good faith and fair dealing and were in bad faith, malicious and designed to deprive Plaintiff of her reputation and good standing in the OSU, as well as the scientific research community without just or legal cause.

104. As a result of Defendant's conduct, Plaintiff has suffered grievous emotional distress and harm.

105. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered a loss

24

of good standing in the medical scientific community of which she has been an upstanding member for more than thirty (30) years.

106.    Further, as a direct and proximate result of Defendants' actions, Defendants must be enjoined from (i) allowing the COMIC report, in its erroneous findings, to be maintained as a public record of the University, (ii) that it cease and desist disseminating the COMIC report and its findings to third parties and online publications, and (iii) that Defendants be directed to produce a revised report that is consistent with federal research misconduct standards and evidence presented by Plaintiff.

### EIGHTH CAUSE OF ACTION
#### (Intentional Infliction of Emotional
#### Distress - Preliminary and Permanent Injunctive Relief)

107.    Plaintiff avers the allegations contained in paragraphs one (1) through one hundred-six (106) as if fully restated herein.

108.    Defendants' COMIC report has caused Plaintiff significant emotional distress because of the COMIC report being disseminated to scientific journals, the media, and members of the scientific community and even presently, wherein the damage to Dr. Pichiorri is continuing as this false information has been used in highly circulated Italian national newspapers in 2023.

109.    Defendants knew or should have known that their failure to apply the proper research misconduct standards and conclusions in its investigation and report has and is causing Plaintiff serious emotional harm.

110.    Plaintiff has suffered grave mental anguish and distress as a result of the improper actions and conduct of Defendants as alleged herein.

111.    Defendants' actions constitute ill will, malice, extreme and outrageous conduct and were committed intentionally, recklessly and without regard to Plaintiff's rights.

112. Finding Plaintiff guilty of research misconduct, based on failure to apply federal and OSU research conduct standards, and disseminating the same, is outrageous and intentionally reckless conduct by Defendants.

113. Further, as a direct and proximate result of Defendants' actions, Defendants must be enjoined from (i) allowing the COMIC report, in its erroneous findings, to be maintained as a public record of the University, (ii) that it cease and desist disseminating the COMIC report and its findings to third parties, and (iii) that Defendants be directed to produce a revised report that is consistent with federal research misconduct standards and evidence presented by Plaintiff.

### NINTH CAUSE OF ACTION
### Principal-Agent/Vicarious Liability

114. Plaintiff avers the allegations contained in paragraphs one (1) through one hundred-thirteen (113) as if fully restated herein.

115. At all times relevant, Defendant OSU Board of Trustees, maintained a principal/agent relationship with members of the COMIC and others.

116. At all times relevant, Defendant Board of Trustees knew or should have known of the unlawful acts of its agent and was responsible for taking the necessary acts to stop the unlawful acts of its agents and rectify the damage to Plaintiff as a result of the unlawful acts of its agents. Despite this responsibility, Defendant Board of Trustees took no steps to stop the unlawful acts of its agents and rectify the damage to Plaintiff.

117. As the principal, Defendant Board of Trustees allowed COMIC and others to engage in the wrongful conduct as described herein.

118. Accordingly, Defendant OSU Board of Trustees is liable to Plaintiff for the unlawful acts or omissions of its employees and/agents.

### TENTH CAUSE OF ACTION
### (Intentional Misrepresentation)

119.     Plaintiff avers the allegations contained in paragraphs one (1) through one hundred-eighteen (118) as if fully restated herein.

120.     Defendants, by and through their employees and agents, including the Ohio State Innovation Foundation (agent), filed a patent application, Patent No. 10022342 and 2022/0251177 A1, based on manuscripts identified by COMIC as research misconduct.

121.     Defendants represented in Patent filing No. 10022342 ("patent filing") that figure 5B in that Patent is valid scientific evidence supporting the award of a patent from  the United States Patent Office.

122.     Figure 5B of the COMIC report has been identified by the COMIC as false.

123.      Defendants cannot assert that Figure 5B is valid scientific evidence in support of a patent application and also assert that the same figure is evidence of research misconduct in the COMIC report and its subsequent dissemination to the public.

124.     Accordingly, Defendants' representation in the COMIC report that Figure 5B is evidence of research misconduct is a misrepresentation of fact.

125.     Defendants have also misrepresented that a research concept asserted in one of the manuscripts (investigated by COMIC) is false.  The concept concerns Nucleolin interaction with small RNA processing complex and miR-21 and miR-221 regulation and the blocking of the Nucleolin as a novel therapeutic mechanism to treat solid cancer progression and invasiveness ("Nucleolin Concept").  The Nucleoin Concept was reported as Figure 1E and F in the *Journal of Experimental Medicine ("JEM")*.  Although the COMIC found it to be false research, it was, nonetheless, used to support the OSU patent application (2022/0251177 A) and several other OSU

publications as valid and true scientific evidence.

126. Defendants knew or should have known that Figure 5B and the aforementioned research concept are not false, as pled in the foregoing paragraphs of the instant Complaint.

127. These misrepresentations are material to the COMIC report and were made either falsely or were made with utter disregard for the truth and with recklessness.

128. The research community, Plaintiff's scientific peers, and the research journals have relied on these representations as research misconduct (in COMIC report) and such reliance has, in some instances, resulted in retraction and questioning of published manuscripts containing these figures.

129. Defendants, by and through their employees and agents, have never retracted or corrected the patent application and award, even though Defendants have benefited from the alleged false research.

130. Defendants cannot take the inconsistent position that the patent and all supporting information is valid and supported by evidence while also finding that figure 5B and Nucleolin Concept is false as pled in the aforementioned paragraphs of the instant Complaint.

131. In addition to the Figure 5B and Necleolin Concept misrepresentations, Defendants themselves, or by and through employees, agents or representatives, have further misrepresented data and figures identified in the COMIC report at issue in *other* research articles published by Defendants, their employees, agents and, representatives. The alleged false research has been used, published and widely disseminated by Defendants, their agents and representatives and predecessors.

132. Defendants knew or should have known that COMIC's identification of research misconduct constituted misrepresentations as to any figures and articles used by Defendants in the research articles; in the alternative, Defendants acted with utter disregard for the truth and were

reckless in finding Dr. Pichiorri guilty of research misconduct based on figures, information and concepts relied upon by Defendants, their employees, representatives, agents and predecessors and widely disseminated in papers and manuscripts throughout the University and the research community.

133.    Defendant Mohler, as Vice President of Research, has the responsibility of overseeing all research activities at The Ohio State University including findings of the COMIC committee and approval of research activity at The Ohio State University.

134.    Defendants knew or should have known of the falsity, and/or recklessness of the COMIC findings against Dr. Pichiorri when the same or substantially similar research, data and figures have been used, relied on, and disseminated on multiple occasions up to the present time (2023).

135.    The misrepresentation of the aforementioned research as false in the COMIC report is material and has been relied on by the research public and scientific journals.

136.    As a direct and proximate result of its intentional misrepresentations, Defendants should be permanently barred and enjoined from asserting research misconduct based on the COMIC report and from disseminating it to the public, journals and research community regarding the Plaintiff Dr. Pichiorri, or, in the alternative, Defendants should revise and/or retract the COMIC report.

137.    The misrepresentations in the COMIC report has resulted in injury to Dr. Pichiorri's reputation, jeopardized current research funding, and harmed her opportunity to obtain future research grants and funding.

139.    As to all of the allegations asserted in this Complaint, Dr. Pichiorri has incurred significant legal fees and costs to challenge and correct the erroneous COMIC report findings and

inference that she is a disreputable researcher.

V.    *Prayer for Relief*

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, and prays that this Court:

1.    Enjoin Defendants from engaging in such conduct;

2.    Enjoin Defendants from allowing the COMIC report, with its erroneous findings, to be maintained as a record of the University and published in online journals;

3.    Enjoin Defendants from disseminating the COMIC report and its findings to third parties;

4.    Order Defendants to revise the COMIC report consistent with federal research misconduct standards and the evidence presented by Plaintiff showing honest error;

5.    Award recovery of attorney fees and costs; and

6.    Grant Plaintiff such other and further relief as may be deemed fair and equitable by the Court.

                    Respectfully Submitted,

                    /s/ Renny J. Tyson
                    Renny J. Tyson (00225576), Trial Attorney
                    RENNY J. TYSON CO., L.P.A.
                    1465 East Broad Street
                    Columbus, Ohio 43205
                    Telephone (614) 253-7800
                    Fax (614) 253-7855
                    admin@rennytysonlaw.com
                    *Attorney for Plaintiff Dr. Flavia Pichiorri*

                         and

/s/ William W. Patmon III
William W. Patmon III (0062204), Trial Attorney
THE PATMON LAW FIRM LLC
4200 Regent Street, Suite 200
Columbus, Ohio 43219
Phone (614) 944-5786
Fax (614) 448-4393
wpatmon@patmonlaw.com
*Attorney for Plaintiff Dr. Flavia Pichiorri*

---

### *JURY DEMAND*

---

Plaintiff demands a trial of this cause by jury.

| /s/ Renny J. Tyson | /s/ William W. Patmon III |
|---|---|
| Renny J. Tyson (0022576) | William W. Patmon III   (0062204) |

---

### *VERIFICATION*

---

I, Flavia Pichiorri, being of legal age and sound mind, have read the foregoing Complaint, including all averments and allegations contained therein. I swear and affirm that the facts alleged are based upon my knowledge, information or belief, and that the facts, allegations and information contained in the foregoing Complaint are true and correct to the best of my knowledge.

Flavia Pichiorri

Sworn to before me and subscribed in my presence on this _____ day of
02-02-2023 , 2023.

_____
Notary Public



N. CHANDRA
Notary Public - California
Los Angeles County
Commission # 2416642
My Comm. Expires Sep 18, 2026

31