UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FLAVIA PICHIORRI, PH.D.,**

     **Plaintiff,**

          **Case No. 2:23-cv-1442**
  **v.**           **JUDGE EDMUND A. SARGUS, JR.**
          **Magistrate Judge Chelsey M. Vascura**

**ARTHUR BURGHES,** *et al.*,

     **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants The Ohio State University Board of Trustees, Arthur Burghes, Brandon Biesidadecki, Jonathan Davis, Jill Rafael-Fortney, Yutong Zhao, Thomas Hund, Loren Wold, Colleen Rupp, and Peter Mohler's Motion to Dismiss. (Mot., ECF No. 39.) Plaintiff Dr. Flavia Pichiorri opposes that Motion (Opp., ECF No. 42), and Defendants replied in support of their Motion (Reply, ECF No. 45). For the reasons below, the Court **GRANTS** the Motion to Dismiss.

## BACKGROUND

### I.    Factual Background

This case is about whether Defendants violated Plaintiff Dr. Pichiorri's rights under federal and state law by issuing and distributing a report that found she committed research misconduct while employed by The Ohio State University as a research scientist.

### A.  Dr. Pichiorri's time at and departure from Ohio State.

Dr. Pichiorri was employed in various research capacities by Ohio State for twelve years starting in 2004, until she left in August 2016. (Am. Compl., ECF No. 37, ¶¶ 11, 15.) Her research focused on "basic and translational research in Multiple Myeloma and Leukemia." (Am. Compl.

1

¶ 16.) She began her career at Ohio State as a visiting Ph.D. student in 2004, under the supervision of Carlo M. Croce, M.D. (*Id.* ¶ 11.) In 2006, after completing her doctoral degree, Dr. Pichiorri became a post-doctoral student/researcher in Ohio State's Department of Molecular Virology, Immunology, and Medical Genetics until October 2010. (*Id.* ¶ 12.) She then served as research scientist in that same Department under Dr. Croce from December 2010 until August 2011. (*Id.* ¶ 13.) From August 2011 until she left Ohio State in 2016, Dr. Pichiorri served as an Assistant Professor in Ohio State's College of Medicine, Division of Hematology. (*Id.* ¶ 14.) Dr. Pichiorri left Ohio State for a position at The City of Hope Medical Center and The Beckman Research Institute of the City of Hope, in Duarte, California. (*Id.* ¶ 15.)

After her departure, Ohio State received allegations that Dr. Pichiorri committed research misconduct during her employment. (*Id.* ¶ 20.) The accusations related to images used in academic articles and manuscripts published while she was working as a research scientist in the lab of Dr. Croce. (*Id.*) In response to the allegations, Ohio State launched a review of the alleged misconduct. (*Id.* ¶ 21.) As part of this initial inquiry in 2017, Dr. Pichiorri was afforded notice of the allegations against her and given an opportunity to respond. (*Id.*) She complied with all requests for information from the Committee of Initial Inquiry and responded to the allegations. (*Id.*; Mot., ECF No. 39, PageID 316, referring to the Committee of Initial Inquiry as "CII.")

### B. Ohio State convenes COMIC to investigate alleged research misconduct.

After reviewing the allegations and Dr. Pichiorri's responses, Ohio State determined that further investigation was warranted and convened the College of Medicine Investigation Committee ("COMIC") to formally investigate the allegations.[1] (*Id.* ¶ 22.) COMIC was composed

---

[1] Ohio State as a recipient of federal funding is required to establish policies and procedures consistent with the Office of Research Integrity ("ORI") standards and federal regulations. (Am. Compl. ¶ 23; *see also* 42 C.F.R. § 93.304.) As such, Ohio State must review and investigate

of faculty and staff from various departments within the College of Medicine, including Defendants Arthur Burghes, Brandon Biesidadecki, Jonathan Davis, Jill A. Rafael-Fortney, Yutong Zhao, Thomas Hund, Loren Wold, and Colleen Rupp. (*Id.* ¶¶ 7, 22.) Defendant Peter Mohler was the Vice President of Research at Ohio State at the time Dr. Pichiorri filed this lawsuit and has since been named Executive Vice President for Research, Innovation, and Knowledge, as well as Interim President of Ohio State (through 2023). (*Id.* ¶ 8; Mot., PageID 317.)

During the research misconduct investigation, COMIC reviewed evidence related to the alleged misconduct, including additional information submitted by Dr. Pichiorri. (*Id.* ¶¶ 27, 29.) Counsel for Dr. Pichiorri argued that the allegations against her stemmed from honest error[2] and expressed Dr. Pichiorri's willingness to correct any such errors. (*Id.* ¶¶ 28–29.) She argued that she and her fellow researchers in Dr. Croce's laboratory were left unsupervised without proper training and required to work long days and nights under strenuous conditions. (*Id.* ¶ 37.) Thus, Dr. Pichiorri attributes any errors in the research published by her and her co-authors to the "significant problems" in Dr. Croce's laboratory. (*Id.*)

### C. COMIC issued final report and recommendations.

At the conclusion of the investigation, COMIC found sufficient evidence to support the allegations of research misconduct raised against Dr. Pichiorri. (Am. Compl., ¶ 34.) The Committee recorded its findings in a final report issued in 2020, that detailed why Dr. Pichiorri's research misconduct was not the result of honest error. (*See id.* ¶¶ 40, 43.) Although the Court is

---

credible allegation of research misconduct (42 C.F.R. §§ 93.307, 93.310), report any such investigations to ORI (42 C.F.R. §§ 93.309 and 93.315), and keep records of proceedings and investigatory reports related to such investigations (42 C.F.R. § 93.317).

[2] Honest error is a defense to a charge of research misconduct which respondents, like Dr. Pichiorri, must prove by a preponderance of the evidence. (Am. Compl., ¶ 28; 42 C.F.R. § 93.106(b)(2).)

without a copy of the final report,[3] Dr. Pichiorri alleges that the report recommended the retraction of two manuscripts and the correction of a third. (*Id.* ¶ 40.) The Committee also recommended that Dr. Pichiorri, although no longer employed by Ohio State, be permanently ineligible for re-hire. (*Id.*) Dr. Pichiorri maintains that the report was incorrect and erroneously premised upon improper standards of review. (*Id.* ¶ 48.) Accordingly, Dr. Pichiorri appealed to challenge COMIC's findings and recommendations. (*Id.*)

### D. Dr. Pichiorri alleges Ohio State and COMIC disseminated the final report to scientific journals and her then-current employer.

Two years after COMIC issued its report, Dr. Pichiorri alleges that Ohio State distributed the report to prestigious journals in July and November 2022. (*Id.* ¶ 40.) One international scientific journal, *Nature*, published an article summarizing the findings of COMIC's 2020 report. (*Id.* ¶ 43.) Pichiorri submits that the dissemination of the Committee's report caused her public humiliation, emotional distress, and injured her professional reputation. (*Id.* ¶ 43.) Defendants say that the Committee's report was only given to *Nature* in response to a public records request. (Mot., PageID 317, n.2.)

Dr. Pichiorri further alleges that Ohio State contacted her then-current employer in October 2022, disclosing the research misconduct findings and requested that her employer investigate her work. (*Id.* ¶¶ 44–45.) Although her employer allegedly concluded that she had not engaged in any further research misconduct, she argues the damage to her reputation was already done—she was diminished in her role as a senior leader at her then-current employer. (*Id.* ¶ 45.) Dr. Pichiorri alleges because of Ohio State's disclosure, she was removed from her permanent membership on a coveted panel at the National Institute of Health, where she had served for seven years. (*Id.* ¶ 46.)

---

[3] It may seem odd that a decision is rendered in this case without the Court having seen the report. In almost all cases, this Court would have ordered a production of the report at issue. This case, however, is resolved on matters not implicated by the substance of the report.

## II.      Procedural Background

In an effort to remedy the harms to her reputation, Dr. Pichiorri filed suit against Ohio State and the individual members of the faculty and staff who served on COMIC ("Individual Defendants") on April 27, 2023. (*See* Compl., ECF No. 1.) Dr. Pichiorri moved for leave to amend her Complaint to clarify that she was suing the Individual Defendants in both their individual and official capacities. (ECF No. 27; *see also* Opp., PageID 371, n.1.) The Court granted Dr. Pichiorri leave to amend and the Amended Complaint is the operative Complaint. (*See* ECF Nos. 36–37.)

Dr. Pichiorri's Amended Complaint includes eleven causes of actions. She alleges that Defendants violated her substantive and procedural due process, as well as her equal protection rights (Counts 1, 2, and 11). (Am. Compl., PageID 287, 289, 303.) She also alleges state-law claims including claims for negligence (Count 3), defamation (Count 4), false light (Count 5), tortious interference (Count 6), breach of implied contract and promissory estoppel (Count 7), intentional infliction of emotional distress (Count 8), vicarious liability (Count 9), and intentional misrepresentation (Count 10). (*See* Am. Compl.)

After Dr. Pichiorri filed her Amended Complaint, Defendants moved to dismiss the complaint for failure to state a claim and for lack of jurisdiction under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Mot., ECF No. 39.)

## STANDARDS OF REVIEW

## I.      Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Lightfoot v. Cendant Mortg. Corp.,* 580 U.S. 82, 92 (2017).

Motions to dismiss for lack of subject matter jurisdiction are either facial attacks or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the

sufficiency of the pleading itself and the district court accepts the allegations of the complaint as true. *Id.* To survive a facial attack, the complaint must contain a "short and plain statement of the grounds" for jurisdiction. *Dehen v. Ohio State Univ.*, No. 2:23-cv-517, 2023 U.S. Dist. LEXIS 132477, at *4 (S.D. Ohio June 5, 2023) (Watson, J.) (citing *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016)).

Defendants raise a facial attack (Mot., PageID 319), so the Court will accept Dr. Pichiorri's allegations as true. The standard of review thus mirrors the standard for a motion brought under Rule 12(b)(6). *Morgan v. United States Dep't of Educ.*, 596 F. Supp. 3d 1023, 1026 (S.D. Ohio 2022) (Black, J.) (citing *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 672 (S.D. Ohio 2017)).

## II.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard from *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

### I.     Eleventh Amendment Immunity

Defendants moves to dismiss pursuant to the Eleventh Amendment of the United States Constitution. (Mot., PageID 319.) Often referred to as sovereign immunity, the "Eleventh Amendment removes from federal jurisdiction any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513 (6th Cir. 2021) (quoting U.S. Const. amend. XI). In other words, the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners, or its own citizens." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (cleaned up). Because Eleventh Amendment immunity operates as a jurisdiction bar, it must be decided before a court may reach the merits. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

Ohio State is a public university in the State of Ohio. *See* Ohio Rev. Code § 3339. Because public universities qualify as an arm of the state, Ohio State "is immune from suit under the Eleventh Amendment." *McCormick*, 693 F.3d at 661 (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)); *see also Pesta v. Cleveland State Univ.*, No. 1:23-cv-00546, 2023 U.S. Dist. LEXIS 121944, at *13 (N.D. Ohio July 14, 2023) (collecting cases that held Ohio public universities are arms of the state and immune).

### A.  The Ohio State Board of Trustees

The Amended Complaint does not clarify whether Dr. Pichiorri sues the Board of Trustees as an entity (arm of the state) or whether she sues the members of the Board in their official or individual capacities. (Am. Compl., ¶ 9.) She does not name the individual members of the Board of Trustees, as she names the individual members of COMIC. Instead, Dr. Pichiorri alleges that the Board can sue and be sued under Ohio law. (*Id.*; citing Ohio Rev. Code § 3335.03 and §

2743.03(A)(2).) But Ohio Rev. Code § 2743.03 waives sovereign immunity and gives consent for boards like the Board of Trustees to be sued in the Ohio Court of Claims—not federal court. *See Davis v. Kent State Univ.*, 928 F. Supp. 729, 733 (N.D. Ohio 1996) ("Under Ohio law, claimants who seek relief against the state and its employees must first file an action in the Ohio Court of Claims."). Dr. Pichiorri offers no arguments to the contrary. (*See* Opp.) Accordingly, the Court construes her allegations against the Board like those brought against Ohio State itself—as claims against an arm of the state.

Generally, there are only three exceptions to a state entity's immunity: (1) when the state has waived sovereign immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity; and (3) when the doctrine set forth in *Ex Parte Young* applies. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). None of the above exceptions applies.

As discussed above, Ohio only waived sovereign immunity with respect to suits filed in the Ohio Court of Claims. *See* R.C. § 2743.03 (waiving sovereign immunity in the Court of Claims). And Congress has not abrogated Ohio's sovereign immunity for § 1983 claims. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (explaining that states and their institutions are still immune under 42 U.S.C. § 1983); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). And finally, the Board as an arm of the state is not a state official, so the exception under *Ex Parte Young* does not apply. *See Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021) (finding *Ex Parte Young* does not apply to a state university). Because no exception applies, the Board as an arm of the state is immune from suit under the Eleventh Amendment.

Dr. Pichiorri's § 1983 and state-law claims against the Board of Trustees are barred by sovereign immunity and are **DISMISSED**.

8

### B. The Individual Defendants

Dr. Pichiorri next argues that the immunity afforded to Ohio State as an arm of the state does not extend to the Individual Defendants in their official or individual capacities. (Opp., PageID 370.) She argues that the exception to sovereign immunity under *Ex Parte Young* applies because she seeks prospective injunctive relief, rather than monetary damages. (*Id.* PageID 371.) Defendants do not dispute that Dr. Pichiorri's Amended Complaint does not seek monetary damages. (*See* Opp., PageID 376 ("It is undisputed that Dr. Pichiorri's prayer for relief includes no demand for money damages").)

Dr. Pichiorri's state-law claims against the Individual Defendants in their official capacities are barred by the Eleventh Amendment. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"—i.e., the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. at 71. The Eleventh Amendment bars such suits. *Id.* at 66; *see also Koch v. Ohio*, No. 3:18-cv-2287, 2020 U.S. Dist. LEXIS 40087, at *7 (N.D. Ohio Mar. 9, 2020), *aff'd,* 858 F. App'x 832, 835 (6th Cir. 2021) ("any claims against state officials in their official capacity are barred by the Eleventh Amendment" because the relief sought would operate against the sovereign state). Because sovereign immunity deprives the Court of subject matter jurisdiction over the Dr. Pichiorri's state-law claims against the Individual Defendants in their official capacity, they must be dismissed. *WCI, Inc v. Ohio Dep't of Pub. Safety*, 18 F.4th at 513.

But Dr. Pichiorri's federal claims against the Individual Defendants in their official capacity for prospective injunctive relief are not precluded by the Eleventh Amendment under the doctrine of *Ex Parte Young*. When a claim seeks prospective relief to end a continuing violation of federal—rather than state law—the "suit challenging the constitutionality of a state official's

actions is not one against the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (explaining that a claim "must seek prospective relief to end a continuing violation of federal law to fall within this exception"). Put differently, a federal court can issue prospective injunctive relief compelling a state official to comply with federal law. *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. at 71 & n.10).

The Individual Defendants argue that Dr. Pichiorri's claims fall outside the *Ex Parte Young* exception because she seeks to remedy past wrongs from the COMIC investigation and final report, rather than to obtain prospective injunctive relief. (Mot., PageID 321–22.) The Court finds that at this stage of litigation, viewing the facts in a light most favorable to Dr. Pichiorri, she has plausibly asserted a claim seeking prospective injunctive relief to survive a motion to dismiss. Dr. Pichiorri seeks prospective injunctive relief preventing the Individual Defendants from continuing to disseminate the allegedly false report, further harming her reputation, and violating her constitutional rights. (*See* Opp., PageID 372.) Therefore, her federal law claims against the Individual Defendants in their official capacities are not precluded by sovereign immunity.

## II.  Constitutional Claims under § 1983

Dr. Pichiorri brings three federal constitutional claims. (Am. Compl., Counts 1, 2, 11.) She alleges that Defendants violated her substantive and procedural due process rights as well as her rights under the Equal Protection Clause of the Fourteenth Amendment. (*Id.*) As the Court explains below, her equal protection and substantive due process claims are barred by the statute of limitations. Even if she raised her equal protection and substantive due process claims within

the statute of limitations, each claim also fails as a matter of law. Finally, her procedural due process claim also fails as a matter of law.

### A. Statute of Limitations

The statute of limitations is an affirmative defense. *Surles v. Andis*on, 678 F.3d 452, 458 (6th Cir. 2012). As a result, Defendants bear the burden of proof on that issue. *Id.* At the motion-to-dismiss stage, Defendants may succeed on a statute of limitations defense only where it is "valid from the face of the Complaint alone" that the plaintiff's suit is time barred. *Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1077 (S.D. Ohio 1987) (Rice, J.); *see also Dollison v. Antero Res. Corp.*, No. 2:21-cv-1619, 2022 U.S. Dist. LEXIS 207453, at *8 (S.D. Ohio May 4, 2022) (Watson, J.) ("[U]nless the face of the Complaint affirmatively shows that the claim is time-barred, it is generally inappropriate to dismiss a claim based on the statute of limitations." (internal quotations omitted)).

The statute of limitations for Dr. Pichiorri's § 1983 claims is two years. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc) (applying two-year statute of limitations under Ohio Rev. Code § 2305.10 to § 1983 claims)). Ordinarily, the statute of limitations "commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Williams*, 680 F. Supp. at 1078 (quoting *Sevier v. Turner*, 742 F.2d 262, 272–73 (6th Cir. 1984) (emphasis in original removed)).

But courts have allowed the statute of limitations to be tolled when the defendant's actions constitute continuing violations. The continuing violations doctrine provides that an action is not time barred where "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff[] accrues continuously; and (3) had the defendants at any time ceased their wrongful

conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (internal quotation omitted).

But "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. State of Tenn. Dep't of Child. Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (internal quotation omitted); *see also Kovacic v. Cuyahoga Cnty. Dep't of Child. & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010) (finding plaintiff's injuries were "continued ill effects" stemming from the "initial removal of her children from her custody"); *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (finding a "claim of wrongful continued incarceration" was an effect of a false arrest and not a continuing violation that tolled the statute of limitations); *Tackett v. Marion Cnty. Fair Bd.*, 272 F. Supp. 2d 686, 691 (N.D. Ohio 2003) ("In this case, plaintiff's citation for trespass was an ill effect of his 1994 ban [from the fairgrounds], not a continuing violation."). To that end, "[p]assive inaction does not support a continuing violation theory." *Id.* (citing *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 2007)).

Dr. Pichiorri alleges that Defendants engaged in continuing wrongful conduct from when the investigation started in 2017 through the time Ohio State published the final report in 2020 and disseminated it to scientific journals as late as November 2022. (Opp., PageID 372, 81–82.) Her claimed injury accrued continuously from when the investigation erroneously began based on allegedly frivolous accusations, and continued as she faced differential treatment from her male co-authors and peers, and finally when COMIC applied the wrong standard of review during the investigation. (Am. Compl., Counts 1, 2, 11.) If Ohio State had ceased the challenged conduct, and not disseminated the final report, Dr. Pichiorri argues, further harms would have been avoided. (Opp., PageID 381–82.)

Dr. Pichiorri also alleges that at least some events underlying her claims occurred within the applicable statute of limitations. *See Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) ("[P]arties who seek to invoke the continuing violations doctrine also must allege they have suffered a specific discriminatory act within the applicable limitations period."). The dissemination of the final report to the scientific journals demonstrated independent acts that gave rise to claims in as late as November 2022. (Opp., PageID 381–82.)

To determine when Dr. Pichiorri's causes of actions accrued, it is necessary to identify the injuries that formed the basis of her constitutional claims. Her substantive due process claims rest primarily on the contention that Defendants conducted an "improper and skewed" investigation and published the results of that investigation in the final report. (*See* Am. Compl., ¶¶ 62, 68; *see also* Opp., PageID 391 ("Defendants arbitrarily and capriciously conducted the investigation and issued a report which did not comply with ORI regulations.").) Her procedural due process claim largely overlaps and alleges that she was entitled to a fair and impartial investigation, which Defendants failed to provide. (*Id.* ¶¶ 74–75.) But she also alleges Defendants violated her due process rights by failing to provide her with notice that Ohio State would share the report with other journals, the media, and her then-current employer. (*Id.* ¶ 76.) Finally, her equal protection claim is based on her contention that she (one of two female researchers) was treated differently than other male researchers who were not investigated or included in the report. (*Id.* ¶¶ 153–54.)

On the face of the Complaint, the injuries that support Dr. Pichiorri's substantive due process and equal protection claim accrued from the investigation and publication of the final report. In other words, she knew or should have known that she was not afforded a fair or impartial investigation during the investigation when Defendants allegedly applied an erroneous standard of review, or at the very least when the final report was issued applying the allegedly incorrect

standard of review. Likewise, she knew or had reason to know that she was being treated differently than the male researchers when the investigation began and she was the only female researcher allegedly investigated. Thus, the event that "should have alerted the typical lay person to protect [ ] her rights" here was the publication of the final report in 2020. *Kuhnle Bros. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quotation omitted).

Dr. Pichiorri's suggestions that if the Individual Defendants had kept the final report confidential, further harms to her reputation would have been avoided, does not save her claims under the continuing violation doctrine. At most, keeping the report confidential would have allowed Dr. Pichiorri to avoid the continued ill effects of the original violation. Without the initial publication of the final report, there would be no allegedly false final report to further disseminate. Once the report was published, there was no conduct for Defendants to "cease" for the third factor in the continuing violation test. From the face of the Amended Complaint, sharing the final report was more like a continued ill effect of the investigation and report, rather than separate unlawful acts.

Since the final report stating that Dr. Pichiorri committed research misconduct was initially published in 2020,[4] the statute of limitations for her substantive and due process claims expired in 2022. Accordingly, both Dr. Pichiorri's substantive due process and equal protection claims are barred by the statute of limitations and must be dismissed.

The Court next addresses Dr. Pichiorri's procedural due process claim. Along with alleging inadequate procedural protections during the COMIC investigation, Dr. Pichiorri also alleges her due process rights were violated because she never received notice that the final report would be

---

[4] The record does not show the exact date or month that the final report was published. Dr. Pichiorri only alleges that the report "was finalized in 2020" when "defendants concluded their research misconduct investigation and issued its findings." (Opp., PageID 378.)

shared with other journals, the media, or her then-current employer. As pled, Dr. Pichiorri's injury under the Due Process Clause must encompass conduct that spanned beyond the initial publication of the final report or is otherwise barred by the statute of limitations. Distributing the final report thus was more than just a continuing ill effect of the purportedly unconstitutional final report but constituted part of Dr. Pichiorri's alleged due process injury. At this early stage in the litigation, Dr. Pichiorri has plausibly alleged that her due process claim accrued in 2020 and continued into 2022 when the final report was shared. Thus, her procedural due process claim is not barred by the applicable two-year statute of limitations.

## B. Constitutional Claims Fail as a Matter of Law

Even if Dr. Pichiorri's substantive due process and equal protection claims were not time-barred, they would still fail as a matter of law. Dr. Pichiorri's procedural due process claim fails as a matter of law because Dr. Pichiorri does not plead a cognizable interest protected by the Due Process Clause.

### i. Substantive Due Process Claim

The Sixth Circuit recognizes two types of substantive due process claims: (1) where an official act has resulted in the denial of a fundamental right secured by the United States Constitution; and (2) where the acts of a government official toward the plaintiff "shocks the conscience." *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). Dr. Pichiorri does not dispute that there is no fundamental right to one's reputation and instead asserts that she has stated a plausible substantive due process claim based on conduct that "shocks the conscience." (Opp., PageID 389–90.) But "only the most egregious official conduct shocks the conscience," and the

conduct here does not rise to that level. *See Doe v. Ohio State Univ.*, 136 F. Supp. 3d 854, 868 (S.D. Ohio 2016) (Graham, J.) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

In *Doe*, a student accused of sexual harassment sought to enjoin Ohio State's investigation. *Id.* at 863. He brought a substantive due process claim under § 1983, but the Court concluded that he was unlikely to succeed on the merits. *Id.* at 865, 868. Under his substantive due process claim, he alleged that Ohio State's conduct was "so excessive and extreme that it shock[ed] the conscience." *Id.* at 868. To shock the conscience, however, as the Court explained, requires allegations that Ohio State's conduct was "inspired by malice or sadism" or amounts to a "brutal or inhumane abuse of power." *Id.* (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987); and *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)). Because Ohio State had done "little more than initiate an investigation into one of its students for alleged misconduct, [the plaintiff] is highly unlikely to succeed on the merits of his 'shock-the-conscience' claim." *Id.*

Here, Dr. Pichiorri's Amended Complaint lacks allegations that Ohio State's conduct in investigating Dr. Pichiorri was inspired by malice. (*See* Am. Compl., ¶¶ 61–71.) Ohio State, like in *Doe*, has done little more than conduct an investigation required by law into one of its research professors for alleged research misconduct. *See* 42 C.F.R. §§ 93.07 and 93.310 (requiring the timely and thorough review and investigation of credible allegations of research misconduct). The fact that the investigation culminated in allegedly adverse action to Dr. Pichiorri does not rise to the level of shocking the conscience. Thus, even if her substantive due process claim were not time-barred, it fails as a matter of law.

### ii.    Equal Protection Claim

Similarly, even if Dr. Pichiorri's equal protection claim was not precluded by the applicable two-year statute of limitations, it would fail still. At first, Dr. Pichiorri alleged that Defendants

violated her equal protection rights by investigating only her and another female colleagues' alleged research misconduct, without making similar findings against her male colleagues. (Am. Compl., ¶¶ 152–61.) Defendants correctly pointed out in their Motion to Dismiss that to state a plausible claim for an equal protection violation, Dr. Pichiorri must show that an impermissible motive (i.e., gender discrimination) motivated the difference in outcomes or treatment between her and her male colleagues. (Mot., PageID 332); *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018) (explaining the same sanction is not required and that the difference in treatment must be based on "purposeful and intentional gender discrimination."); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977).

Dr. Pichiorri's Amended Complaint only alleges a difference in treatment, not an impermissible motivation. (*See* Am. Compl., ¶¶ 152–61.) And her memorandum opposing the Motion to Dismiss does not defend her equal protection claim, and therefore has presumably waived it. *See e.g.*, *United States v. Denkins*, 367 F.3d 537, 543–44 (6th Cir. 2004) (explaining that a claim is waived when a plaintiff initially raises it, then explicitly abandons it later). Thus, Dr. Pichiorri's equal protection claim fails as a matter of law.

### iii.    Procedural Due Process Claim

Defendants argue that Dr. Pichiorri's remaining procedural due process claim must fail as a matter of law. (Mot., PageID 328–332; Reply, PageID 412–14.) In essence, Dr. Pichiorri claims she was not afforded adequate procedural protections before Defendants disseminated the final report accusing her of research misconduct in 2022 to her then-current employer and other scientific journals. (*Id.*)

To prevail on a procedural due process claim, Dr. Pichiorri must establish that (1) she had a life, liberty, or property interest protected by the Due Process Clause; (2) she was deprived of

this protected interest; and (3) a state actor did not afford her with adequate procedural protections before the deprivation. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Due process ensures individuals are afforded with notice and a meaningful opportunity to respond before a deprivation. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

Defendants assert that Dr. Pichiorri fails to show a deprivation of a protected interest because she alleges only a reputation harm. (Mot., PageID 328–31; Reply, PageID 412–14.) And even if reputational harm amounted to a protected interest, she was afforded adequate procedural protections such that her claims should fail as a matter of law. (*Id.*)

While Dr. Pichiorri concedes that reputation harm alone cannot give rise to a procedural due process claim, she asserts that Defendants also deprived her of future employment with Ohio State when they decided she was permanently ineligible for re-hire. (Opp., PageID 392.) Defendants counter that "[t]he decision to place her on an internal 'do not hire list' (after she voluntarily left the university) does not give rise to a due process claim so long as she is free to seek employment elsewhere." (Reply, PageID 413.)

"[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the Due Process Clause of the Fourteenth Amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). Reputational harm alone, however, without a "more tangible interest[] such as employment is not by itself sufficient to invoke the procedural protection of the Due Process Clause." *Murtha v. Rossford Exempted Vill. Sch.,* No. 21-3449, 2021 U.S. App. LEXIS 32181, at *11 (6th Cir. Oct. 25, 2021) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Courts have recognized a liberty interest where the injury to an individual's reputation occurred because of or in connection with the employee's termination. *E.g.*, *Bd. of Regents v. Roth*, 408 U.S. 564, 573–74 (1972). This standard, known as the "stigma-plus" standard, requires more than

simple defamation by a state official to establish a claim under the Fourteenth Amendment. *Murtha*, 2021 U.S. App. LEXIS 32181, at *13–14; *see also Harris v. Detroit Pub. Schools*, 245 F. App'x 437, 444 (6th Cir. 2007) (holding when the plaintiff voluntarily resigned, he could not satisfy the stigma-plus standard). There is no protected liberty interest if allegedly defamatory statements are not made "incident to termination" (i.e., if the employee voluntarily resigns) even when the plaintiff's reputation is "undoubtedly damage[d]" and his future employment prospects are impaired. *Siegert v. Gilley*, 500 U.S. 226, 234 (1991).

Put differently, the "loss of one job and certain future opportunities does not constitute deprivation of a protected liberty interest." *Jackson v. Heh*, No. 98-4420, 2000 U.S. App. LEXIS 14075, at *18 (6th Cir. June 2, 2000). "Indeed, it is only where the defendant's action effectively precludes the plaintiff from practicing his trade with all employers or customers that the plaintiff's liberty interesting in pursuing his occupation is infringed." *Id.*

The allegedly defamatory statements made in COMIC's final report were not made "incident to termination" but did occur in connection with its recommendation that Dr. Pichiorri be declared permanently ineligible for re-hire. She argues that the deprivation of her right to pursue future career opportunities with Ohio State—the university where she completed her doctoral degree—was a change in legal status, coupled with her reputational harm, that brings her harms under the protections of the Due Process Clause. (Opp., PageID 392.)

But Dr. Pichiorri offers no case law to support her assertion that the decision to place her on a do-not-hire list amounted to a deprivation of an interest protected by the Fourteenth Amendment. To the contrary, the United States Supreme Court, and the Sixth Circuit have held that damaged future employment prospects coupled with reputational harm does not form the basis of a recognized procedural due process claim. *Siegert*, 500 U.S. at 234; *Murtha*, 2021 U.S. App.

LEXIS 32181, at \*13–14. Dr. Pichiorri has not established on the face of her Complaint that Defendants' allegedly defamatory conduct precluded her from practicing her trade as a research scientist with all employers such that her liberty interest in her occupation was infringed. *Jackson*, 2000 U.S. App. LEXIS 14075, at \*18. Since Dr. Pichiorri has not established that she was deprived of a protected interest under the Due Process Clause, she failed to plausibly state a claim for relief. Her procedural due process claim fails as a matter of law.

Having found that Dr. Pichiorri's federal constitutional claims are all barred by the statute of limitations or fail as a matter of law, Dr. Pichiorri's substantive due process (Count 1), procedural due process (Count 2), and equal protection (Count 11) claims are **DISMISSED**.

### III. State Law Claims

Dr. Pichiorri also brings several state-law claims for: negligence (Count 3), defamation (Count 4), false light invasion of privacy (Count 5), tortious interference with a business relationship (Count 6), breach of implied contract and promissory estoppel (Count 7), intentional inflict of emotional distress (Count 8), vicarious liability (Count 9), and intentional misrepresentation (Count 10). (*See* Am. Compl.) As the Court explained above, her state-law claims against Defendants in their official capacities are dismissed under the Eleventh Amendment and only her state-law claims against Defendants in their individual capacities may proceed. (*See supra*, Section I.) Defendants argue that her remaining state-law claims are barred by the statute of limitations and preempted by federal law. (Mot., PageID 324, 333.) But the Court need not address the merits of Defendants' arguments because the Court declines to exercise supplemental jurisdiction over Dr. Pichiorri's remaining state-law claims.

A district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction. "If the federal claims are dismissed before

trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). As the Court discussed above, Dr. Pichiorri's federal claims were dismissed as either barred by the applicable statute of limitations, or for failing to state a claim upon which relief may be granted. (*See supra*, Section II(A), (B)(i)–(iii).) The remaining state-law claims do not implicate significant federal interests to warrant the exercise of federal jurisdiction. *See Gregory Props., Inc. v. Marchbanks*, No. 2:22-cv-2896, 2024 U.S. Dist. LEXIS 3043, at *12 (S.D. Ohio Jan. 5, 2024). The values of economy, convenience, fairness, and comity combine to make it appropriate for a state court to exercise jurisdiction over Dr. Pichiorri's remaining allegations. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966). Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims, and they are **DISMISSED without prejudice** pursuant to 28 U.S.C § 1367(c)(3).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 39) is **GRANTED**. Dr. Pichiorri's claims against The Ohio State University Board of Trustees, and her state-law claims against Defendants in their official capacities are **DISMISSED** under the Eleventh Amendment. Dr. Pichiorri's constitutional claims under § 1983 are either barred by the applicable statute of limitations or fail as a matter of law and thus are **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Dr. Pichiorri's remaining state-law claims against Defendants in their individual capacities, and thus **DISMISSES without prejudice** these claims.

The Clerk is directed to **ENTER JUDGMENT** and **CLOSE** this case.

**IT IS SO ORDERED.**

**9/25/2024**                             **s/Edmund A. Sarus, Jr.**
**DATE**                                  **EDMUND A. SARGUS, JR.**
                                          **UNITED STATES DISTRICT JUDGE**